IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **PERFICIENT, INC.,** § | |
| § | |
| *Plaintiff*, § | |
| § | Case No. |
| v. § | |
| § | **JURY DEMANDED** |
| **DZS, INC.,** § | |
| Serve: Registered Agent § | |
|     Corporation Trust Center § | |
|     1209 Orange Street § | |
|     Wilmington, DE 19801 § | |
| § | |
| *Defendant*. § | |

## COMPLAINT FOR DAMAGES

Plaintiff Perficient, Inc. ("Perficient"), for its Complaint for Damages against Defendant DZS, Inc. ("DZS"), respectfully shows the Court as follows:

**I.      INTRODUCTION**

1.      This is an action for breach of contract, in addition to other quasi-contractual claims, arising under the laws of the State of Texas.  As set forth below, DZS breached material terms of the Master Services Agreement with Perficient by failing and refusing to pay for goods and services provided by Perficient and accepted (and retained) by DZS.

2.      As a result of DZS's failure and refusal to pay for goods and services provided pursuant to the terms of the Master Services Agreement, Perficient has incurred $803,130.19 in unpaid fees, as well as other damages.  Perficient files this action to collect its duly-owed payment for work performed and goods rendered, as well as its attorney's fees and costs.

## II. PARTIES, JURISDICTION AND VENUE

3. Perficient is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business located at 555 Maryville University Drive, Suite 600, Saint Louis, Missouri 63141.

4. DZS is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 5700 Tennyson Parkway, Suite 400, Plano, Texas 75024.  DZS may be served with process through its registered agent Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6. Venue is proper in the Sherman Division of the Eastern District of Texas pursuant to Section 21(j) of the Master Services Agreement, which was entered into by Perficient and DZS and which provides that venue and jurisdiction shall lie, exclusively, with the state or federal court sitting in Collin County, Texas.

## III. FACTS COMMON TO ALL COUNTS

### A. DZS Engagement of Perficient

7. Perficient is a North American cloud-based systems integration company.

8. Perficient maintains a dedicated Oracle practice, which means that Perficient resells and provides consulting services on Oracle products, including the cloud-based applications Oracle Enterprise Resource Planning ("Oracle ERP") and Oracle Supply Chain & Manufacturing ("Oracle SCM"), which are relevant to the present dispute.

9. Oracle ERP and Oracle SCM are both intended to assist companies, including Perficient's customers, in the creation, storage and utilization of data for many purposes, including financial management, project management, risk management and compliance, supply chain planning and inventory management.

10. DZS—formerly Zhone Technologies and DASAN Zhone Solutions—is a telecommunications company.

11. DZS markets itself as a leader in broadband connectivity and designs, develops and manufactures communications network equipment for telecommunications operators and enterprises.

12. DZS is a "roll-up" company, in that its current corporate structure and operations are the product of an aggregation of many other companies (many of them overseas, with the largest one based in Korea).

13. In late 2020, the business and operations of DZS underwent rapid transformation. After relocating from the San Francisco Bay area to Plano, Texas, DZS hired a new CEO in July of 2020—Charlie Vogt ("Vogt")—who was charged with accelerating DZS's technological capabilities even before he had fully assembled his new management team.

14. One of Vogt's key hires during this period of rapid change was Darren Whitney ("Whitney") as CIO, in September 2020.

15. In an effort to improve and streamline the operations of DZS—which had previously been the operations of various different companies—DZS reached out to Perficient to explore implementing Oracle ERP and Oracle SCM to improve the way DZS created, stored and utilized data by and between its various operations worldwide, including Japan, Europe and North America.

B. **The MSA and SOW**

16. On or about March 22, 2021, DZS and Perficient entered into a Master Services Agreement (hereafter, "MSA"). A true and accurate copy of the MSA is attached hereto as **Exhibit A** and incorporated herein by reference.

17. At its broadest level, the goal of the MSA was to engage Perficient's services in developing, adapting and implementing the cloud applications Oracle ERP and Oracle SCM for the data systems, operations and technologies that were already being utilized by DZS (hereinafter, the "Oracle Project").

18. The MSA provided the terms and conditions upon which Perficient would invoice DZS for its services and DZS would provide payment for the same:

> [Perficient] will invoice DZS at the address designated in writing by DZS (such designation may be provided in writing via a Statement of Work, a Purchase Order, or via email). Invoices shall identify the Deliverable or performance milestone being invoiced. Unless otherwise stated in a Statement of Work, undisputed invoices will be paid on the thirtieth (30th) day from day of invoice (the "**Payment Period**").
>
> ***
>
> If DZS notifies [Perficient] that it disputes part of an invoice prior to the invoice becoming due, DZS may only pay the undisputed invoice amount per the Payment Period, the disputed amount shall become due upon ten (10) business days of [Perficient's] correction or response to the dispute notice subject to DZS agreeing to such correction or response.

See MSA, § 4(b)-(d).

19. As part of the MSA, DZS also agreed to not solicit, directly or indirectly through a third party, any employees of Perficient involved with the Oracle Project for a year after such work was completed:

> Neither Party shall solicit, nor attempt, **directly or through a third party, the services for employment or otherwise grant employment or subcontracting arrangement through a third party to any employee of the other Party** who is involved in the performance of Services pursuant to a Statement of Work during

> the time period such Services are being performed and for one year after their completion without the prior consent of the other Party. The foregoing shall not be deemed to include responses to general solicitations of employment (whether through advertisements, recruiting firms or other means) not specifically directed toward employees of the Parties.

Id. at § 21(n) (emphasis added).

20. On or about March 23, 2021, DZS and Perficient agreed to and executed a Statement of Work ("SOW") for the MSA and the Oracle Project. A true and accurate copy of the SOW is attached hereto as **Exhibit B** and incorporated herein by reference.

21. The SOW outlines the scope of the Oracle Project, the anticipated deliverables from Perficient and the timeline and pricing of the project. See SOW, Ex. B.

22. In fact, the SOW specifically provided a pricing structure for Perficient's estimation of the scope of the work :

> Perficient is providing DZS, Inc. with a Time and Materials pricing structure for this engagement. This bid is based on the scope and assumptions defined herein. Any events that cause changes to the project scope or timeline, will follow the Change Control Process as defined in this SOW.

Id. at § 5.2.

23. The SOW contained an initial expected timeline of five (5) months, from March through July 2021, and an initial implementation budget of $1,412,438.00. However, Perficient applied a thirteen-point-five percent (13.5%) discount—i.e., $185,736.00—for a total of $1,266.702.00. Id.

24. In March 2021, Perficient relied on the descriptions and representations of DZS and, accordingly, believed the MSA and SOW to be a good faith representation of the scope of the Oracle Project.

25. Notwithstanding, both Perficient and DZS recognized and agreed in the SOW that either "[DZS] or Perficient may from time to time request, and the respective project managers or

sponsors may mutually agree to, 'Change Requests' that alter the scope, specification, design, application functionality, duration, or cost outlined in this SOW." Id. at § 6.2; see also MSA, Ex. A, § 3(f) ("The Parties may make changes in ordered Services and Deliverables by mutual written consent ('Change Order')"). Both parties also acknowledged that such change requests "may be warranted due to unexpected system down time, change in system design, or other events that may be outside the original or out of Perficient's direct control." See SOW, Ex. B, § 6.2.

### C. The Change Requests

26. As noted above, Perficient relied upon the descriptions and representations of DZS and believed the SOW to be an accurate assessment of the scope of the Oracle Project.

27. DZS drastically underestimated the scope of the Oracle Project in the SOW.

28. The new management team at DZS did not understand what would be required to accomplish the goals of the Oracle Project because they did not understand the data systems, operations and technologies utilized by DZS.

29. DZS's lack of understanding of its own data systems, operations and technologies undermined the parties' efforts to accurately bid or estimate the scope of the Oracle Project.

30. As part of the Oracle Project, Perficient was engaged by DZS to adapt Oracle ERP and Oracle SCM to integrate with DZS's existing data systems, operations and technologies.

31. To effectively perform the work on the Oracle Project (or to effectively estimate the time and costs required to perform such work), Perficient needed DZS to provide an in-depth understanding of the data systems, operations and technologies used by DZS.

32. To adapt Oracle ERP or Oracle SCM to DZS's existing data systems, operations and technologies, Perficient was dependent on DZS's ability to accurately and comprehensively describe its data systems, operations and technologies.

33. The subsequent change requests, submitted by Perficient and agreed to by DZS, demonstrate that at the time it agreed to the SOW, DZS did not have an accurate or complete understanding of its own data systems, operations and technologies, nor their impact on the parties' ability to determine the time, cost and scope of the Oracle Project.

34. Each of the subsequent change requests was necessary because there were constant revelations and discoveries about the actual data systems, operations and technologies used by DZS, and corresponding changes to the actual scope of the Oracle Project.

35. As provided for in the MSA and SOW, the Oracle Project changed and expanded to accommodate additional software, hardware or other operations which had never been disclosed to Perficient by DZS, but nonetheless needed to be adapted to work with Oracle ERP and Oracle SRM.

36. By way of example, when Perficient employees arrived at DZS's warehouse in Seminole, Florida, they discovered that certain equipment, including barcode scanners, was being used by DZS but had never been disclosed by DZS, which required additional adaptations to be compatible with Oracle ERP and Oracle SCM.

37. As a result of DZS's failure to accurately describe its data systems, operations and technologies, Perficient submitted three (3) change requests to DZS to address additional work that would be required on the Oracle Project.

38. On or about August 13, 2021, Perficient submitted and DZS agreed to a change request (the "August CR") which increased the budget of the Oracle Project by $499,955.00 even though "Perficient deliverables are those outlined in the original SOW which have not changed."

39. On or about September 14, 2021, Perficient submitted and DZS agreed to a change request (the "September CR") which increased the budged of the Oracle Project by $362,246.00

even though "Perficient deliverables are those outlined in the original SOW which have not changed."

40. Finally, on or about November 3, 2021, Perficient submitted and DZS agreed to a change request (the "November CR") which increased the budget of the Oracle Project by $1,621,790.00.

41. Altogether, the August CR, September CR and November CRs increased the budget of the Oracle Project from $1,412,438.00 (the amount contained in the SOW) to $3,896,429.00. True and accurate copies of the August CR, September CR and November CRs (collectively, the "Change Requests") are attached hereto as **Group Exhibit C** and incorporated herein by reference.

42. Together, the MSA, SOW and Change Requests reflect and constitute the entire contract and agreement by and between Perficient and DZS (hereafter, the "Agreement").

    **D.**    **DZS's Mismanagement of the Oracle Project**

43. From the outset, the Oracle Project was undermined by DZS's management team's lack of understanding of DZS's own data systems, operations and technologies, and thus, what would actually be required of Perficient to complete the Oracle Project.

44. The individuals at DZS who engaged Perficient and coordinated with them throughout the Oracle Project were unable to accurately describe the data systems, operations and technologies of the various companies acquired by DZS and, more importantly, were unable to appreciate the challenges associated with an integration project of the size and complexity of the Oracle Project.

45. The problems arising from DZS's mismanagement of the Oracle Project were compounded by turnover among the management team at DZS.

46. During the Oracle Project, it became clear that members of DZS's management team were trying to manage tensions between the new management team located in Texas, and the management of the international companies comprising DZS.

47. Certain members of DZS's management team attempted to control the flow and substance of communications between Perficient and management of the companies comprising DZS.

48. Certain members of DZS's management team would manipulate and "revise" reports and updates from Perficient to conceal how badly the project had been underestimated and mismanaged by DZS.

49. During the Oracle Project, certain members of DZS's management team micro-managed and controlled the Perficient team, rejected and ignored Perficient's recommendations, re-directed resources contrary to Perficient's SOW and change requests, and tried to cover up the true status of the project from other members of the DZS management team.

50. One of the members of DZS's management team reported to Perficient that the company culture at DZS was "toxic."

**E.     DZS's Breach of the Agreement**

51. In the November CR, Perficient and DZS agreed to a new "payment solution" because DZS had consistently failed to timely pay Perficient under the terms of the Agreement.

52. In the November CR, DZS agreed to a pre-payment obligation and an accelerated deadline for payment of invoices "without set off or deduction" by DZS:

> Perficient and DZS agree to a new payment solution for this CR. Perficient will invoice DZS monthly in arrears for services performed (time and materials) and [DZS] will pay to Perficient the amount invoiced without set off or deduction, with fifteen (15) days from the date of invoice. DZS also agrees that an initial pre-payment of $230,068.50 (15% of total) will be paid upon signature of this CR or prior to the start of the engagement, whichever happens first.

See November CR, Grp. Ex. C, § 5.4.

53. After agreeing to the November CR, Perficient submitted eleven (11) invoices (the "Invoices") to DZS for work performed from November 2021 through January 2022.

54. The aggregate amount of the Invoices is $803,130.19.

55. The numbers, dates and amounts of the Invoices are as follows:

| INVOICE | DATE ISSUED | DATE DUE | AMOUNT |
|---|---|---|---|
| 173056 | December 3, 2021 | January 2, 2022 | $230,068.50 |
| 173086 | December 4, 2021 | January 3, 2022 | $19,388.75 |
| 174067 | December 13, 2021 | January 14, 2022 | $44,389.10 |
| 174069 | December 13, 2021 | January 14, 2022 | $3,442.57 |
| 174506 | December 27, 2021 | January 28, 2022 | $1,800.00 |
| 174876 | January 19, 2022 | February 18, 2022 | $15,810.00 |
| 175418 | January 6, 2022 | February 5, 2022 | $305,674.16 |
| 175419 | January 6, 2022 | February 5, 2022 | $9,790.61 |
| 176534 | February 3, 2022 | March 5, 2022 | $166,579.89 |
| 176781 | February 4, 2022 | March 6, 2022 | $5,625.00 |
| 178620 | March 4, 2022 | April 3, 2022 | $561.61 |
| | | Total: | $803,130.19 |

56. DZS has not disputed or paid any of the Invoices as required by the Agreement.

57. At the same time DZS was failing and refusing to pay the Invoices, and notwithstanding it agreed to the November CR, DZS's management team requested that Perficient provide options to get the Oracle Project "back on track" in early 2022.

58. In response to Perficient providing DZS numerous options about how to approach the remaining work on the Oracle Project, DZS instructed Perficient to "freeze" any further work on the Oracle Project so that DZS could evaluate the options provided by Perficient.

59. All of the work reflected in the Invoices was performed by Perficient *before* DZS told Perficient to "freeze" further work on the Oracle Project.

60. All of the work reflected in the Invoices was performed by Perficient pursuant to the Agreement.

61. Perficient contacted DZS multiple times after being told to "freeze" work on the Oracle Project, but DZS ignored or rebuffed Perficient's overtures.

62. After instructing Perficient to "freeze" work on the Oracle Project, DZS was actively looking for "new partners" for their Oracle-related needs.

63. In March 2022, DZS advised Perficient that it had engaged Inspirage, LLC ("Inspirage") to perform an "audit" of the Oracle Project.

64. DZS has failed and refused to provide Perficient any reports or assessments from Inspirage regarding the Oracle Project.

65. Upon information and belief, DZS covertly engaged Inspirage to replace Perficient on the Oracle Project, and to complete the Oracle Project by building off of the services and deliverables already provided by Perficient.

66. Inspirage has hired away at least four (4) Perficient employees since being engaged by DZS, and attempted to obtain information from these former Perficient employees about the Oracle Project and the work performed by Perficient for DZS.

67. Perficient has made demand on DZS for the outstanding amount of $803,130.19 owed under the Invoices.

68. Perficient has put DZS on notice that any attempts to hire former Perficient employees, whether directly or indirectly through Inspirage, may constitute a violation of the Agreement.

69. Notwithstanding its acknowledgment that the Invoices are due and owing yet unpaid, DZS has failed and refused to pay the Invoices.

## IV. CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

70. Perficient restates and realleges the preceding paragraphs as though set forth fully herein.

71. Perficient and DZS entered into a valid, enforceable contract, pursuant to which Perficient would provide goods and services to develop and implement two cloud-based Oracle applications for DZS for an agreed-upon price.

72. Perficient performed its contractual obligations required by rendering the goods and services specified by the Agreement.

73. DZS breached its contractual obligations by failing to pay the amounts due and owing for the goods and services rendered by Perficient, as reflected in the eleven outstanding Invoices.

74. All conditions precedent have been performed or have occurred for Perficient to recover from DZS for breach of contract.

75. DZS's breach has caused Perficient substantial financial injuries—in amounts unpaid totaling at least $803,130.19 for the goods and services rendered by Perficient.

76. Perficient is also entitled to attorney's fees incurred in bringing this action against DZS, as well as costs of collection, and other expenses and costs continuing to accrue.

## COUNT II - QUANTUM MERUIT

In the alternative to Count I, Perficient asserts the following claim for quantum meruit against DZS:

77. Perficient restates and realleges the preceding paragraphs as though set forth fully herein.

78. Perficient provided valuable goods and services to DZS, in connection with developing and implementing two cloud-based Oracle applications pursuant to Agreement.

79. Perficient performed this work at DZS's request and on DZS's behalf.

80. Despite receiving the benefit of the goods and services provided by Perficient, DZS has not remitted full payment for the goods and services performed by Perficient.

81. The eleven Invoices issued by Perficient to DZS spanning the time period of December 2021 to March 2022 and the numerous correspondence from Perficient to DZS demanding payment beginning in February 2022, served as reasonable notice that Perficient expected to be paid for these goods and services.

82. All conditions precedent have been performed or have occurred for Perficient to recover from DZS.

## COUNT III - UNJUST ENRICHMENT

In the alternative to Count I, Perficient asserts the following claim for unjust enrichment against DZS:

83. Perficient restates and realleges the preceding paragraphs as though set forth fully herein.

84. Perficient provided valuable goods and services to DZS.

85. DZS accepted the benefit and value of the goods and services performed by Perficient.

86. The eleven Invoices issued by Perficient to DZS spanning the time period of December 2021 to March 2022 and the correspondence from Perficient to DZS demanding payment sent in February 2022, served as reasonable notice that Perficient expected to be paid for these services.

87. DZS would be unjustly enriched if DZS was permitted to retain the benefit of the goods and services rendered by Perficient without making payment to Perficient.

## V.     ATTORNEY'S FEES AND COSTS

88. Perficient restates and realleges the preceding paragraphs as though set forth fully herein.

89. As a result of DZS's refusal to pay the outstanding Invoices, Perficient has been required to engage an attorney and has incurred attorney's fees and expenses in initiating this proceeding.

90. Perficient seeks to recover from DZS its attorney's fees as authorized under the Texas Civil Practices and Remedies Code, Tex. Civ. Prac. & Rem. Code §§ 38.001-38.006.

## VI.    PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Perficient, Inc. prays for judgment against Defendant DZS, Inc. as follows:

1) DZS be cited to appear and answer;

2) Perficient be granted judgment in the amount of at least $803,130.19;

3) Perficient be granted attorney's fees and costs incurred herein;

4) Pre-judgment and post-judgment interest at the maximum allowable rate; and

5) Any other relief at equity or law to which the Court may deem just and proper.

Respectfully submitted,

By:   */s/ Laurie N. Patton*
     Laurie N. Patton
     Texas Bar No. 24078158

     SPENCER FANE LLP
     5700 Granite Parkway, Suite 650
     Plano, Texas 75024
     Tel: (972) 342-0300
     Fax: (972) 324-0301
     Email: lpatton@spencerfane.com

     Erik O. Solverud, Lead Counsel**
     Missouri Bar No. 44291
     Arthur D. Gregg**
     Missouri Bar No. 67098
     Catherine L. Schwarze**
     Missouri Bar No. 71161
     **(Pro Hac Vice Applications Forthcoming)
     1 North Brentwood Blvd., Suite 1000
     St. Louis, Missouri 63105
     Tel: (314) 863-7733
     Fax: (314) 862-4656
     Email: esolverud@spencerfane.com
            agregg@spencerfane.com
            cschwarze@spencerfane.com

     **ATTORNEYS FOR PLAINTIFF**