DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

# MASTER SERVICES AGREEMENT

This **MASTER SERVICES AGREEMENT** (the "**Agreement**") is entered into as of March 22nd, 2021 (the "**Effective Date**") by and among DZS Inc., a Delaware corporation ("**DZS**"), and Perficient, Inc., a Delaware corporation ("**Supplier**").  DZS and Supplier are hereinafter jointly referred to as the "**Parties**," with each individually being referred to as a "**Party**."

*Recitals*

Whereas, the Parties desires that Supplier provide DZS with certain information technology services and

**Now therefore**, in consideration of the following terms and conditions, the receipt and adequacy of which is hereby acknowledged by all of the Parties, the Parties hereto agree as follows:

## 1.  Definitions

"**Acceptance**" or "**Accepted**" means DZS agrees that the Services and Deliverables have been completed in accordance with the requirements of the applicable Statement of Work.

"**Background IPR**" of a party means any Intellectual Property or IPR of such party, as well as any Third Party Property (as defined below), that is conceived, created, or developed prior to, or independently (including, without limitation, in the future) of, any work performed under this Agreement or any SOW hereunder, whether or not the subject matter of such Intellectual Property or IPR is incorporated into, is used by and/or covers a Deliverable.

"**Confidential Information**" means all information or material that has or could have commercial value or other utility in the business or prospective business of the disclosing party ("**Disclosing Party**"). Confidential Information also includes all information actually disclosed, whether tangible or intangible, and in whatever form or medium provided, that the receiving party ("**Receiving Party**"), acting reasonably, would consider as confidential, including any information of which unauthorized disclosure could be detrimental to the interests of the Disclosing Party, whether or not such information is identified as Confidential Information by the Disclosing Party.  Confidential Information shall include, without limitation, the terms and conditions of this Agreement. Confidential Information does not include information that the Receiving Party can demonstrate:  (a) was in its possession prior to being furnished under the terms of this Agreement, provided the source of that information was not known by the Receiving Party to be bound by a confidentiality agreement with or other continual, legal or fiduciary obligation of confidentiality to the Disclosing Party; (b) is now, or hereafter becomes, through no act or failure to act on the part of the Receiving Party, generally known to the public; (c) is rightfully obtained on a non-confidential basis by the Receiving Party from a third party, without breach of any obligation to the Disclosing Party; or (d) is independently developed by the Receiving Party without use of or reference to the Confidential Information.  The terms "**Disclosing Party**" and/or "**Receiving Party**" shall include DZS or Supplier, as applicable, and their respective affiliates.  For DZS, "**affiliates**" means any legal entity that it controls, where the term "**control**" means to own or control, directly or indirectly, over 50% of voting shares.  For Supplier, "**affiliates**" means any legal entity that Supplier controls, is controlled by, or under common control with, where the term "**control**" means to own or control, directly or indirectly, over 50% of voting shares.

"**Contractor**" means a third party that has a written agreement with DZS allowing the third party to design, manufacture, integrate or support any product or service of DZS.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

"**Deliverables**" means all items to be produced or delivered by Supplier in accordance with this Agreement as specified in the relevant SOW. Deliverables include without limitation data (including drawings, prints and plans) and documentation (including Deliverable Technical Information).

"**Deliverable Technical Information**" means the technical information necessary for DZS to manufacture or have manufactured, modify, enhance, translate, use, support, compile, configure, create derivative works based on and/or integrate the Deliverables.

"**Distributor**" means a third party that has a written agreement with DZS, or another Distributor to lease, sell, sublicense or otherwise distribute Solutions.

"**End User**" means a third party licensed by DZS Customer to use a Solution.

"**EU**" means European Union.

"**Exploit**" or "**Exploitation**"  means any of copying, using, manufacturing, having manufactured, selling, reselling, preparing derivative works based on, reproducing, leasing, modifying, translating, licensing, sublicensing, distributing, testing, compiling, configuring, integrating, verifying, marketing, supporting or maintaining tangible or intangible property, performing any other commercially beneficial activity or having another perform any such commercially beneficial activity, with such property.

"**Foreground IPR**" means any Intellectual Property and/or IPR that arises from, and/or is conceived, created, developed or contracted to be developed in performing, any work under or in accordance with a Statement of Work, including, without limitation, any and all Intellectual Property or IPR the subject matter of which is incorporated into, is used by and/or covers the Deliverables and/or enhancements to, modifications to, or derivatives of the Deliverables, provided however, that no such Intellectual Property or IPR shall be or include any Background IPR.

"**DZS Customer**" means a third party licensed to use a Solution, which may include, but shall not be limited to, a service provider licensed to use a Solution to provide application hosting services to its customers.

"**DZS Purchasing Entity**" means DZS or any Subsidiary that issues a Purchase Order under this Agreement for the benefit of DZS.

"**Intellectual Property Rights**" or "**IPR**" means without limitation, all rights in any invention, discovery, improvement, utility, patent, patent rights, trademarks, service marks, copyrights, copyrightable work, industrial design or mask work, algorithm, data structure, trade secrets, trade dress or know how, Confidential Information, or any idea having commercial value and any other intellectual property rights; IPR shall include all rights of whatsoever nature in computer software and data, all intangible rights or privileges of a nature similar to any of the foregoing in every case in any part of the world and whether or not registered, and all rights in any applications and granted registrations for any of the foregoing rights.

"**Object Code**" means the Source Code compiled into a machine-readable form.

"**Open Source Software**" means software for which the Source Code is (a) in the public domain or (b) distributed under an open-source license, including the Apache Software License, BSD license, GNU General Public License, GNU Lesser General Public License, MIT License, Eclipse Public License, Common Public License and Mozilla Public License or any similar license.

"**Personal Data**" means data which one Party receives from the other Party and which relates to or is capable of identifying any person.

"**Purchase Order**" means any order issued under this Agreement by a DZS Purchasing Entity identifying the Statement of Work (as defined below) applicable to such order. A Purchase Order should not be used

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

to purchase Services or Deliverables without an accompanying Statement of Work. If there is a conflict between a Purchase Order and the applicable Statement of Work, the Statement of Work shall control.

"**Representative**" means the relevant party's directors, officers, employees, contractors, agents, and financial, legal and other advisors.

"**Services**" means the services under this Agreement and described in an SOW which are to be performed by Supplier pursuant to that SOW and/or those services to be performed by Supplier which are required to produce a Deliverable.

"**Solution**" means any product or service of DZS, including any enhancement, replacement, modification or evolution of such Solution, in which Deliverables are integrated, embedded or executed.

"**Source Code**" means software in a form in which the program logic is readily understandable by a human being.

"**Specifications**" means the functionality, operating characteristics and performance criteria as set out in the relevant documentation.

"**Statement of Work**" or "**SOW**" means a mutually executed document containing the definition of specific Services and Deliverables incorporated into and made part of this Agreement, including any related planning, management, and internal resources required by Supplier to complete the Services and Deliverables.  An example SOW is included in Appendix A to this Agreement.

"**Subsidiary**" means an entity that directly or indirectly is controlled by DZS by equal to or more than fifty percent (50%) of the voting stock, shares or voting power.

"**Tax**" means foreign, federal, state, provincial and local (i.e. sales, use, excise, value-added, goods and services) taxes with respect to DZS's purchases under this Agreement, excluding withholding taxes.

"**Third Party Property**" means any pre-existing tangible or intangible property of a third party that is licensed to a Party, including, without limitation, any software of a third party for which the IPR is licensed from such third-party by a Party to this Agreement and controlled by such Party.

"**Worker**" means Supplier's employees, any contractors and sub-contractors, the employees and contractors of any contractors and sub-contractors and any other individual who performs Services under this Agreement and any applicable SOW.

2. **Parties Authorized to Participate Under Agreement**

   a) DZS Purchasing Entities are authorized to place orders under this Agreement via a Statement of Work.  Each Statement of Work between a DZS Purchasing Entity and Supplier will create contractual rights and obligations under this Agreement between the DZS Purchasing Entity that executed the Statement of Work and Supplier.  A DZS Purchasing entity may issue Supplier a Purchase Order in furtherance of a Statement of Work, notwithstanding the foregoing, a Purchase Order should not be used to purchase Services or Deliverables without an accompanying Statement of Work. If there is a conflict between a Purchase Order and the applicable Statement of Work, the Statement of Work shall control.  Where a DZS Purchasing Entity places an order under this Agreement and the context so admits, references to DZS shall be deemed be to the relevant DZS Purchasing Entity which is placing an order in accordance with the terms of this Agreement. DZS shall remain  responsible to Supplier under this Agreement for their respective Subsidiaries and Contractors.

   b) DZS may exercise its rights and perform its obligations associated with this Agreement through Subsidiaries.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

c) Supplier may use subcontractors to fulfill its obligations under this Agreement only with the prior written consent of DZS.  Supplier shall remain responsible to DZS under this Agreement for services provided by subcontractors and contractors.

3. **Ordering, Suspension, Acceptance and Cancellation**

a) In its sole discretion, DZS may issue a Purchase Order under this Agreement in accordance with 2(a). For avoidance of doubt, unless otherwise committed by DZS in this Agreement, DZS's signing this Agreement does not create a commitment by DZS to purchase any minimum quantity or monetary amount of products or services.

b) Intentionally omitted.

c) Supplier will accept Purchase Orders that comply with the terms of this Agreement (including the requirement of such Statement of Work to be identified in a Purchase Order) and Supplier will acknowledge such acceptance in writing within three  (3) business days from its receipt of any Purchase Order.  Failure to provide written acceptance will be deemed acceptance by Supplier.

d) DZS may suspend or cancel all or part of a Statement of Work, by thirty days prior written notice to Supplier.

e) Supplier hereby agrees to complete the Services and Deliverables as set forth in any SOW executed pursuant to this Agreement. For clarity, Services and Deliverables documented in a SOW will be considered committed and ordered by DZS even without a corresponding Purchase Order issued by DZS.

f) The Parties may make changes in ordered Services and Deliverables by mutual written consent ("**Change Order**").  If Supplier makes changes without a Change Order, Supplier shall not invoice DZS and DZS will have no obligation to pay Supplier for the changed Services and Deliverables.

g) DZS shall be entitled to request Supplier to suspend performance of Services by giving ten (10) business days prior written notice to Supplier. The suspension of performance of Services shall not exceed fifteen (15) business days unless otherwise agreed between the Parties. In such event, all time periods for performance of each Party's respective obligations under this Agreement shall be extended by a period equal to the period of such suspension.  In no event will Supplier be entitled to any additional payment for such suspension. Upon lift of suspension of performance of Services, Supplier makes no guarantees that the previous resources providing Services will be available to continue to provide Services.

h) Upon receipt of a Deliverable from Supplier, DZS shall conduct the Acceptance tests for that Deliverable within five (5) business days or as described in the SOW ("Acceptance Period").  If the Deliverable fails such Acceptance tests, DZS may choose to reject the Deliverable.  In such event, DZS shall provide Supplier's project manager identified in the applicable SOW with a notice stating in reasonable detail the manner in which the Deliverable failed such Acceptance tests. Upon receipt of such a notice from DZS, Supplier shall promptly, unless a specific period for correction of the Deliverable is provided in the SOW, correct the Deliverable.   Upon receipt of a corrected Deliverable from Supplier, DZS shall have an additional thirty (30) days to conduct Acceptance tests on the corrected Deliverable. If no notice of failure or non Acceptance is provided to Supplier within the Acceptance Period, the Deliverable will be deemed Accepted.  If the Deliverable does not pass its Deliverable Acceptance tests after the second attempt, DZS shall have the option of either:

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

    a)  terminating the SOW by notice in writing to Supplier, in which case DZS shall be deemed to have terminated the SOW for material breach;

    b)  modifying the terms and conditions of the applicable SOW pursuant to Section 3(f); or

    c)  requiring Supplier to join DZS in repeating the procedure set forth in this Section 3(h).

**4.  Prices and Payments**

    a)  All prices and payments for an order under this Agreement will be in U.S. currency unless otherwise set forth in the applicable SOW.

    b)  Supplier will invoice DZS at the address designated in writing by DZS (such designation may be provided in writing via a Statement of Work, a Purchase Order, or via email).  Invoices shall identify the Deliverable or performance milestone being invoiced. Unless otherwise stated in a Statement of Work, undisputed invoices will be paid on the thirtieth (30th) day from date of invoice (the "**Payment Period**").

    c)  Supplier will invoice DZS for Services and Deliverables (i) monthly in arrears after Services are performed if Services are provided on a metered or hourly basis, (ii) upon receipt of Acceptance from DZS for the applicable Deliverables and/or performance milestones listed in the applicable SOW, or (iii) as identified within a Statement of Work.  Supplier will invoice DZS monthly for its out-of-pocket expenses, which must be pre-approved by DZS in writing and in compliance with DZS's travel and living expense policy. If requested by DZS, Supplier must provide receipts for its expenses.  When identified in a Statement of Work, Supplier shall provide DZS with all time sheets associated with its Services and Deliverables on a weekly basis for DZS's approval.

    d)  If DZS notifies Supplier that it disputes part of an invoice prior to the invoice becoming due, DZS may only pay the undisputed invoice amount per the Payment Period, the disputed amount shall become due upon ten (10) business days of Supplier's correction or response to the dispute notice subject to DZS agreeing to such correction or response.

    e)  Intentionally omitted.

    f)  Intentionally omitted.

    g)  Payment shall not constitute Acceptance of non-conforming Services or Deliverables or performance milestones.

    h)  Intentionally omitted.

**5.  <Intentionally left blank>**

**6.  <Intentionally left blank>**

**7.  Taxes**

    a)  Unless otherwise agreed to in advance, all prices are exclusive of applicable Taxes for which DZS is obliged to pay Supplier.

    b)  If any governmental authority imposes a Tax for which DZS is responsible under this Agreement, DZS will pay the Tax if Supplier provides a valid invoice in accordance with the legal requirements of the jurisdiction of the entity issuing the invoice.  If the invoice and associated Taxes are not correctly prepared in accordance with local law, the amount of the Tax will be deemed to have been included in the price for the products and services purchased, and paid in full when DZS pays

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

the applicable invoice with respect to such products and services. DZS will not be responsible for any other taxes, including without limitation, taxes imposed upon Supplier's net income, gross receipts, or assets.

c)   Supplier will timely remit all Taxes to the proper authorities.  If DZS provides Supplier with a Tax exemption certificate, Supplier will not invoice for the Taxes specifically exempted. Supplier will reimburse DZS to the extent Taxes paid by DZS are recovered by Supplier from the taxing or government authority.  If Taxes may only be refunded to DZS, Supplier shall help DZS obtain the refund.

d)   If DZS is required by law to withhold any tax with respect to a payment to Supplier, DZS will (i) withhold the appropriate amount from the payment, (ii) pay the withheld amount to the applicable authority, (iii) pay Supplier the remaining amount in accordance with this Agreement, and (iv) provide Supplier with evidence of payment of such withholding tax.

e)   If Supplier provides DZS with documentation sufficient to permit DZS to reduce or eliminate the deduction for withholding tax as may be permitted by law and DZS reduces the deduction in reliance on such documentation, Supplier will indemnify and hold DZS harmless from and against any and all assessments for such taxes, including all interest, penalties, and late charges and the reasonable cost of professional fees incurred by DZS to settle the matter with the relevant tax authorities.

8.   **Term and Termination**

a)   <u>Term</u>

i)    This Agreement will be in effect for five (5) years ("**Initial Term**") from the Effective Date, unless terminated earlier under Section 8(b).  At the conclusion of the Initial Term, this Agreement shall automatically renew for successive one-year terms (each, a "**Renewal Term**") unless either Party provides written notice of non-renewal to the other Party no later than one (1) month prior to the end of the Initial Term or the then-current Renewal Term.  The Initial Term and each Renewal Term are referred to herein as the "**Term**".  In the event this Agreement expires while there are still SOWs in progress, such SOWs executed before expiration of this Agreement shall continue to be governed by the provisions of this Agreement (as if such Agreement were still valid and unexpired) until such SOWs are terminated or completed.

ii)   Each individual SOW will begin on the date specified in the applicable SOW and continue until completion of all Services (including without limitation technical support and maintenance and training) and Deliverables required hereunder or under the applicable SOW, or until terminated as set out below or in the applicable SOW.

b)   <u>Termination</u>

i)    If a Party materially breaches this Agreement, the breaching Party will have thirty (30) days from receipt of notice to cure the breach, failing which the non-breaching Party may terminate the Agreement by providing written notice to the breaching Party.

ii)   Each Party will have the right to terminate this Agreement or any SOW without cause upon thirty (30) days' written notice to the other Party.

iii)  Either Party will have the right to terminate the applicable SOW immediately if the other Party is in material breach of any warranty, term, condition, or covenant of this Agreement, which

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

breach materially and adversely affects the benefits to the non-breaching Party under this Agreement, and the breaching Party fails to cure that breach within ten (10) business days after written notice of that breach and of the non-breaching Party's intention to terminate.

c) <u>Effect of Termination or Expiration</u>.

Upon termination or expiration of this Agreement or the applicable SOW:

i) Unless otherwise stated by DZS, all rights and licenses granted by DZS to Supplier under this Agreement or the applicable SOW shall immediately terminate;

ii) Supplier will immediately: (1) cease work, (2) deliver to DZS all materials furnished by or owned by DZS, including but not limited to Confidential Information, including all copies thereof, (3) prepare and submit to DZS an itemization of all completed and partially completed Services and Deliverables; (4) deliver all Deliverables achieving Acceptance at the aggregate fees, if any, in the relevant SOW; and (5) deliver, upon request, any work in process;

iii) If there is an associated fee, DZS will pay Supplier for all Services and Deliverables that have achieved Acceptance by DZS prior to the effective date of termination.  DZS will additionally pay the appropriate portion of any fee for the Services of any incomplete Deliverable ;

iv) If terminated for Supplier's breach, DZS may terminate any or all outstanding orders in accordance with this section;

9. **Grant of Rights.**  Unless otherwise expressly set forth in the applicable SOW, subsections 9(a) through 9(h) below shall apply:

a) Each party will remain the exclusive owner of its Background IPR.

b) Supplier hereby grants to DZS a fully paid-up, perpetual, irrevocable, worldwide, non-exclusive, and royalty-free license to use, copy, modify, translate, compile, configure, distribute, and sublicense Supplier's Background IPR, only to the extent the Supplier's Background IPR is part of the Deliverables.

c) DZS hereby grants to Supplier, including Workers, a limited, non-exclusive, royalty-free, worldwide, non-transferable, indivisible, personal license for the term of the SOW only to use, modify, prepare derivative works based on, and copy IPR provided by DZS pursuant to such SOW. Such license shall be limited to and solely for the purposes of Supplier fulfilling its obligations under the SOW and this Agreement.  Nothing in this Agreement shall grant to Supplier any rights or license to use any DZS IPR and/or Confidential Information (including without limitation any DZS Confidential Information developed pursuant to this Agreement) for any purpose other than completion of the Services and Deliverables hereunder except as otherwise provided in the applicable SOW.

d) Supplier's tools (whether software or hardware) that may be used in providing Services will remain the property of Supplier and will not be considered Deliverables unless specified as Deliverables in the applicable SOW.

e) DZS will own all Deliverables and derivatives of the Deliverables created by or for DZS, including all Foreground IPR. Ownership of the applicable Deliverables and derivatives shall pass to DZS from the time of DZS's payment in full to Supplier for the Services applicable to the Deliverables and derivatives. Supplier agrees to execute any further documentation required to file, register or otherwise protect the IPR in the Deliverables and derivatives of the Deliverables, or to secure research and development tax incentives, at DZS's reasonable request and expense. Without

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

limiting the foregoing, all Deliverables and derivatives of the Deliverables shall be deemed "works made for hire" under the copyright, patent and other laws of the United States and shall belong solely to DZS.

f)   Supplier hereby assigns to DZS, upon payment in full to Supplier for the Services applicable to the Foreground IPR, all right, title and interest in, to and under any Foreground IPR and shall treat all such information as if it were DZS Confidential Information. Supplier agrees to, at DZS's request, execute any further documentation required to file, register, record, evidence, perfect, or otherwise reflect DZS's ownership in and to the Foreground IPR.  Supplier further agrees to promptly identify to DZS any and all Foreground IPR, including without limitation any inventions conceived in Supplier's development of a Deliverable, so that DZS can evaluate whether it desires to file, register, or otherwise seek patent or other IPR protection of the Foreground IPR.  In the event that DZS decides, in its sole discretion, to file, register or otherwise seek patent or other IPR protection for any Foreground IPR, Supplier agrees to cooperate with DZS in such endeavor, including providing all testimony and executing all documents (including declarations, affidavits, and assignments) necessary to seek such protection and to vest DZS with exclusive title to the Foreground IPR.

g)   Supplier represents and warrants that the creators of the Deliverables, including all Workers, have waived in writing their moral rights in the Deliverables, and have agreed to assign all intellectual property and ownership rights in the Deliverables and all Foreground IPR to DZS, through Supplier. Supplier shall ensure that (1) Supplier will execute the agreement set out in Exhibit B to this Agreement, or an agreement containing substantially similar provisions; and (2) binding written agreements between Supplier and Workers are no less restrictive than the terms hereof with regard to Confidential Information. Upon request by DZS, Supplier will provide the original executed documents to DZS and shall perform any other such actions as reasonably requested by DZS to effect the terms of this subsection 9(g).

h)   Supplier will not include in Deliverables or Services any Third Party Property unless otherwise specified in the applicable SOW. If Third Party Property is specified in the applicable SOW, Supplier will obtain from the respective third parties, full paid-up, perpetual, worldwide, non-exclusive, royalty-free, transferable licenses for DZS, its Subsidiaries, to utilize Third Party Property as required for (1) the Exploitation of the Deliverables and (2) the performance of activities related to the SOW,  including without limitation the right to use, copy, modify, translate, compile, configure, create derivative works based on, distribute and sublicense such Third Party Property. Supplier will promptly notify DZS of any difficulties in obtaining Third Party Property licenses. In all other respects, this Agreement does not affect a third party's ownership or rights in Third Party Property.

## 10.  Confidential Information

a)   Except as provided herein, the Receiving Party and its Representatives shall not disclose any of the Confidential Information of the Disclosing Party in any manner whatsoever and shall hold and maintain the Confidential Information in confidence using the same standard of care as it takes with its own Confidential Information of like nature, but no less than reasonable care. Notwithstanding the preceding, nothing herein shall in any way be construed to prevent, limit or restrict the Parties from exercising its rights under this Agreement, including those set forth in Section 9, and DZS shall be entitled to disclose Supplier's Confidential Information to third parties that have a need to know for purposes of carrying out or accounting for this Agreement, provided

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

that such third parties have entered into written confidentiality agreements directly with Supplier prior to DZS disclosing Supplier's Confidential Information to said third parties.

b) The Receiving Party may disclose the Disclosing Party's Confidential Information to the Receiving Party's Representatives who (a) are advised of the confidential nature of such Confidential Information, and (b) are bound by a written agreement to protect the confidentiality of such Confidential Information.

c) If the Receiving Party is required by applicable law, rule, regulation or lawful order or ruling of any court, government agency or regulatory commission to disclose any Confidential Information, the Receiving Party agrees that it will, to the extent permitted by law, provide the Disclosing Party with prompt notice of such requirement in order to enable the Disclosing Party to seek an appropriate protective order or to take other steps to protect the confidentiality of such Confidential Information.  In the event such notification is not permitted, such protection is not obtained or the Disclosing Party waives compliance with the provisions of this Agreement, the Receiving Party may disclose only that portion of the Confidential Information that it is legally required to disclose.

d) Only with the other Partiy's prior written consent may each party (i) advertise, make public statements, or publish information concerning this Agreement, an order, or the relationship between the Parties, or (ii) use the name or trademark of the other Party with respect to any advertising, promotion, publicity, or representation that the Parties may make in connection with the other Party's business, services, or product lines.

e) With respect to any DZS Confidential Information (including proprietary information and intellectual property) provided by DZS to Supplier under this Agreement, DZS grants to Supplier the non-exclusive and non-transferable right to utilize such DZS Confidential Information (including Intellectual Property Rights in such information) solely for the purposes of complying with its obligations under this Agreement.

f) Subject to each Party's obligations under the above confidentiality provisions, nothing in this Agreement shall be interpreted or construed to limit either Party's right to independently pursue its business models, including any business activities involving those offered or contemplated by the other party, or to perform or to continue to perform its own independent research, development, manufacturing or marketing of any type even if such research, development, manufacturing or marketing pertains to technology related to any of the activities performed under this Agreement.

g) Notwithstanding any provision in this Agreement to the contrary, no license to DZS Intellectual Property Rights, technical information, data and DZS Confidential Information granted to Supplier shall survive the termination or expiration of this Agreement and, accordingly, Supplier is expressly prohibited from using or otherwise relying on information or concepts pertaining to such Intellectual Property Rights, technical information, data and DZS Confidential Information for the provision of goods or services to third parties outside the scope of this Agreement and following termination or expiration of this Agreement.

**11. Supplier Governance**

a) <u>Reporting</u>. As agreed between the Parties, Supplier will provide the following reports:

i) Minority/Women Business Enterprise and/or Disabled Veteran Business Enterprise (MWBE/DVBE) data documenting the reporting company, certifying agency, ethnic/gender

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

        code, company name, address and contact and quarterly totals of employees by work category.

    ii) Operational reporting as agreed to by the Parties to support managing of the business.

b) <u>Audit Rights</u>.  Upon five (5) business days' notice, DZS may audit the books, records, or any documents (hardcopy or electronic versions) of Supplier relating to the delivery of Services or Deliverables under this Agreement.  Within DZS's sole discretion, it may use a third party or DZS employees to conduct the audit provided the third party shall execute a written agreement with Confidential Information protections substantially similar to those contained herein directly with the Supplier.

c) <u>Audit Rights Confidential Information</u>.  Notwithstanding the above, DZS will not be entitled to any Confidential Information or proprietary information of Supplier or a third party not directly related to the Services or Deliverables.

d) <u>Supplier Cooperation</u>.  If required, Supplier will ensure that DZS has access to its facilities and personnel as required to facilitate the audit.  Supplier will inform DZS visiting representatives in advance about Supplier's facility safety and security rules.   Following an audit by DZS, Supplier will participate in any exit conference conducted by DZS.

e) <u>Audit Expenses</u>.  Unless otherwise provided in this Agreement, each Party will bear its own expenses relating to any audit under Section 11(b).  If Supplier is found non-compliant to terms or requirements of this Agreement, Supplier will reimburse DZS for any overcharges and reasonable audit expenses if overcharges exceed 5% of the applicable Statement of Work value within ten (10) days of completion of the audit.

**12. Materials and Equipment Furnished by DZS; Risk of Loss**

a) DZS will own all materials and equipment it provides to Supplier under this Agreement.  **DZS WILL PROVIDE THE MATERIALS AND EQUIPMENT ON AN "AS IS" BASIS ONLY WITHOUT ANY WARRANTY OR CONDITION, AND DZS HEREBY DISCLAIMS ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND/OR NON-INFRINGEMENT.**

b) <u>Title</u>.  Title in all materials and equipment provided by DZS to Supplier under this Agreement shall remain with DZS at all times. While in Supplier's possession and control, Supplier shall be liable for any loss or damage to such tangible materials or equipment. Damage or loss shall be valued at either (i) the manufacturing cost if manufactured by DZS, or (ii) the replacement cost (if purchased from a third party).

c) <u>Audit</u>.  Supplier and DZS representatives shall jointly perform a physical inventory audit in order to determine any loss or damage to the materials and equipment provided by DZS.

d) <u>Return of Materials</u>.  On DZS's request, completion of Services, or termination of an SOW or the Agreement, Supplier shall return the materials and equipment supplied by DZS at Supplier's risk and expense in the same condition in which they were furnished to Supplier, reasonable wear and tear excepted.

e) <u>Risk of Loss</u>.  Risk of loss or damage to tangible Deliverables ordered under this Agreement shall pass to DZS upon its receipt of such Deliverables at the delivery location specified in the applicable SOW.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

**13. Insurance**

a) During the Term Supplier will maintain the following types of insurance coverage and liability limits:

   i) a comprehensive general liability insurance policy that provides coverage on an occurrence basis that (1) includes third party liability coverage protecting DZS from property damage or personal injury caused by Supplier, (2) includes Products and Completed Operations, (3) has a minimum combined single limit of $1,000,000.00 U.S., (4) provides worldwide coverage, and (5) indicates on its face that it is primary insurance;

   ii) an Errors & Omissions liability insurance policy that provides coverage on an occurrence basis that (1) has a minimum combined single limit of $5,000,000.00 U.S., and (2) provides worldwide coverage;

   iii) Employer's liability insurance with a minimum liability limit of $1,000,000.00 U.S., including coverage for injury and occupational disease;

   iv) Workers' compensation, with the statutory requirement for coverage; and,

   v) If Supplier's performance under this Agreement will in any way involve Supplier's use of vehicles (e.g., automobiles or trucks), comprehensive automobile insurance for all owned and non-owned vehicles, covering at minimum, bodily injury and property damage, with a minimum liability limit of $1,000,000.00 U.S. for each occurrence.

b) <u>Additional Insured</u>.  Supplier will name DZS as an additional insured on Supplier's comprehensive general liability and Comprehensive Automobile Insurance policy.   Such coverages shall be primary to any insurance carried by DZS

c) <u>Certification</u>.  If requested by DZS within ten (10) business days after the Effective Date, Supplier will provide to DZS a certificate of insurance as evidence of the required, paid-up coverage and will furnish an updated certificate of insurance within ten (10) business days after any request of such coverage. The insurance policy will be in addition to Supplier's indemnities under this Agreement.

d) Supplier shall not cancel or change a policy to the extent it doesn't meet the above insurance limits without at least thirty (30) days' advance written notice to DZS and will ensure that Supplier's insurers cannot cancel or change a policy without providing Supplier adequate notice to allow Supplier to give such notice to DZS.

**14. Workers**

a) <u>Independent Contractors</u>.  This Agreement shall not constitute either Party the agent or legal representative of the other Party for any purpose, and neither Party shall hold itself out as an agent of the other Party other than as expressly provided in this Agreement.  This Agreement does not create a joint venture, partnership, principal-agent, or employment relationship between DZS and Supplier and/or Workers, and DZS and Supplier are acting under this Agreement as independent contractors.   Supplier shall indemnify and defend DZS and will hold DZS harmless from any claim or liability and related costs (including legal fees) resulting from (a) Supplier's and/or Workers' or any third party's claiming that Supplier or Worker has the status of a DZS employee, including related employment benefits; (b) Supplier or Worker failing to withhold or pay, as applicable, employment taxes; or (c) DZS not having withheld or paid employment taxes

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

with respect to Supplier or Worker.  The obligations of this Section 14 will survive the termination of the Agreement.

b)  <u>Removal of Workers</u>.  DZS shall have the right, without additional cost and at any time, to request Supplier to remove one of its employees from the supply of Services or Deliverables to DZS for any reason.  Supplier shall remove such employee within five (5) business days' from the supply of Services or Deliverables upon receiving such request from DZS. DZS shall not be responsible for payment for Services supplied by such Supplier employee after the effective date of such removal. Any such request by DZS for removal of any Supplier employee shall not be considered to be a request for termination of any employment or other relationship between the employee and Supplier.  Any decision to terminate such employment or other relationship shall be made solely by Supplier. Supplier shall indemnify, defend and hold DZS free and harmless from all employment liabilities arising out of the request by DZS for removal and/or Supplier's termination of any employment or other relationship with any Supplier employee.

c)  <u>Special Terms and Conditions relating to the Transfer Regulations</u>

   i)  If Supplier provides Services under this Agreement using any Workers whose principal residence is located in a country that is governed by Transfer Regulations (defined below), the terms and conditions of this Section 14(c) apply to those Workers.

   ii)  In this section, "**Transfer Regulations**" means (1) Acquired Rights Directive 77/187 ("**ARD**") or any provisions of national law giving effect to such Directive, (including the Transfer of Undertakings Regulations as amended); or (2) the laws of a country waiting for admittance to the EU that is conforming its laws to the laws of the European Union, including the ARD, or (3) the laws of a country that is not a member of the EU, and that is not awaiting membership, whose laws are analogous to or have a similar effect to the provisions of the ARD (e.g., laws with substantially the same provisions as the ARD).

   iii)  Supplier acknowledges and agrees that DZS does not require Supplier to assign any employee of Supplier or, if applicable, procure the assignment of any employee of any permitted sub-contractor of Supplier wholly or mainly to the provision of the Services.

   iv)  Supplier agrees to arrange its staff, and, if applicable, procure that any permitted sub-contractor of Supplier arranges its staff, in relation to the provision of the Services in such a way that no individual is at any time wholly or mainly assigned to the provision of the Services and consequently that no contract of employment of any individual will transfer from Supplier (or any sub-contractor of Supplier) to DZS, or to any new supplier by virtue of the Transfer Regulations, on the cessation or partial cessation of the provision of the Services by Supplier, or otherwise.

   v)  Notwithstanding the above clause, if the employment of any individual is transferred from Supplier (or any sub-contractor of Supplier) to DZS or to any new supplier by virtue of the Transfer Regulations or any person asserts that his employment has so transferred, then DZS or such new supplier may terminate the employment of any such person within thirty (30) business days of becoming aware of such transfer or alleged transfer. Whether or not DZS or such new supplier terminates any contract of employment in such circumstances, Supplier will indemnify DZS and each new supplier against all losses, fines, penalties, awards, liabilities, costs, damages and expenses (including reasonable legal expenses on an indemnity basis) which DZS and/or any such new supplier may suffer or incur and which arise in  connection with, or relate to the employment of such a person and/or the termination of their contract of employment.

CONFIDENTIAL INFORMATION

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

15. **Drug Testing and Background Checks**

Unless drug and alcohol testing or background checks are prohibited by law in the location at which the Services will be performed under this Agreement, Supplier must only assign employees and subcontractors and their employees to perform the Services at that location who have undergone (a) a drug test and (b) a background check at Supplier's sole expense. The drug test and background checks will be conducted in accordance with then current industry standards. The background check will include, but not be limited to, Supplier's (a) verification of educational history and identity and a criminal record check and a motor vehicle report and (b) other screening as reasonably requested by a DZS. Supplier shall, upon DZS's request, provide DZS with a written certification that Supplier has conducted any required drug test and background check and the pass, fail, or compliance status of such drug test and background check as permitted by applicable law. Upon request by DZS, Supplier will provide DZS with information about Supplier's procedure for conducting drug testing and background checks.

16. **Intentionally omitted**

17. **Warranties**

   a) <u>General Warranty</u>. Supplier represents and warrants that Supplier is authorized and has sufficient corporate powers to enter into this Agreement.

   b) <u>Services Warranties</u>.

      i) Supplier warrants that the Services have been and will be performed in a professional and workmanlike manner in accordance with generally accepted industry standards and will conform to this Agreement and the applicable SOW.

      ii) Supplier warrants that the Services will not infringe any third party Intellectual Property Rights.

      iii) If Supplier breaches the Services warranties, at DZS's request Supplier will re-perform the applicable Services at Supplier's cost within forty-eight (48) hours so that the Services conform to the warranty, provided that DZS gives Supplier written notice of the noncompliance within thirty (30) days after, as applicable, Supplier's performance of the applicable Services. If Supplier is unable to resolve the breach of the Services warranty, Supplier shall refund the amounts paid for the Services.

   c) <u>Deliverables Warranties</u>.

      i) Supplier warrants that Deliverables (1) including the media, if applicable, will be free from defects in material and workmanship in accordance with generally accepted industry standards and will strictly conform to this Agreement and the applicable SOW and (2) comprising Object Code or Source Code shall contain no time limiting codes, authorization strings, or hardware key locks that will prevent the Deliverable from being fully functional at all times or that may be used to modify, damage, disable or compromise the security of any products provided by DZS, of DZS Customer networks, of End User networks, or of DZS's own networks or computer systems.

      ii) Supplier represents and warrants that the Deliverables (1) are safe for normal use and non-toxic, (2) present no abnormal hazards to persons or their environment, (3) may be disposed

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

of as normal refuse without special precautions, and (4) do not include any materials which have been defined as hazardous materials under any applicable statute, regulation, rule, bylaw, or ordinance.

iii)   Supplier represents and warrants that (1) it has the right to convey title and grant the licenses as provided in this Agreement, including without limitation with respect to the Deliverables and any licenses in Third Party Property, (2) it has and shall pass to DZS good title (or, in the case of Third Party Property, licenses) to the Deliverables, free and clear of all liens and encumbrances, and (3) the Deliverables do not infringe any third party IPR.

iv)   The "Warranty Period" for Deliverables will be determined in the applicable SOW.  If an SOW does not include a Warranty Period, the default Warranty Period will be thirty (30) days' from Acceptance of the applicable Deliverable.

v)   If any Deliverables fail to conform to the warranties in this Section 17(c), Supplier will use best efforts to remedy any nonconformance at Supplier's cost.

d)   <u>Open Source Software Warranties</u>.

i)   Supplier represents and warrants for the life of the Deliverables that:

(a)   except for the portions of Deliverables listed in the applicable SOW or in a separate document as identified by DZS, the Deliverables do not include any Open Source Software;

(b)   Supplier is in compliance with all licenses for Open Source Software that is part of the Deliverables; and

(c)   using the Deliverables as permitted under the applicable SOW will not give rise to any limitation, restriction or condition on DZS's right to develop, use or distribute Solutions, other than as expressly set out in the applicable SOW.

ii)   If Supplier breaches a representation and warranty in Section 17(d), Supplier will

(a)   at Supplier's expense, immediately modify the affected Deliverables while retaining equivalent functional capabilities, or substitute the affected Deliverables with equivalent functional capabilities, and

(b)   at DZS's option, indemnify DZS for third party damages suffered as a result of the breach.

iii)   Notwithstanding the preceding, Supplier may update the list referenced in Section 17(d)(i)(a) with DZS's prior written approval.

e)   <u>Third Party Warranties</u>.  To the extent that Supplier receives third-party warranties for software incorporated into or bundled with Deliverables, materials or services that exceed the warranties set out above, Supplier hereby extends such warranties to DZS.

f)   <u>Intentionally omitted.</u>

g)   <u>Corrected Work</u>.  The warranties set out in this Section 17 will apply to any corrected work and such corrected work will include a new Warranty Period starting upon delivery of corrected work to DZS.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

h) <u>Time is of the Essence</u>.  Supplier acknowledges that time is of the essence in completing the Services and Deliverables and that Supplier's failure to deliver any Service or Deliverable on its scheduled delivery date may result in expense and damage to DZS.

**18. Indemnification**

a) In this section the following definitions apply:

i) "**Liabilities**" means all third party fines, penalties, losses, damages, costs, injuries, liabilities, settlements and expenses (including reasonable attorneys' fees) arising out of any claims, proceedings, suits or actions brought by a third party.

ii) "**Indemnitees**" means, in respect of a Party, the affiliates, and subsidiaries of that Party, and their employees, including the employees of the Party.

b) Each Party shall defend, indemnify and hold harmless the other Party and its Indemnitees from any Liabilities resulting from injury or death of a person or damage or loss of property resulting from the negligence or willful misconduct of the indemnifying Party or any person acting on its behalf.

c) Supplier shall defend, indemnify and hold harmless DZS and its Indemnitees from any Liabilities (i) resulting from Supplier's breach of this Agreement; or (ii) resulting from an allegation that the sale, use, distribution or manufacture of any Deliverables or services, or the exercise of any rights granted hereunder, infringes any Intellectual Property Right of any third party (an "**Infringement Claim**").  For purposes of this Agreement, Infringement Claims and indemnification obligations related to Infringement Claims shall be deemed to be direct damages.

d) Supplier will promptly pay its subcontractors and suppliers.  In the event that any such subcontractors or suppliers file any lien affecting DZS, at Supplier's expense, Supplier will obtain the release and discharge of such lien within ten (10) business days upon written demand by DZS. Supplier will indemnify, defend and hold harmless DZS and its Indemnitees from any liens and/or claims, suits or injunctions (with respect to liens) brought by Supplier's employees, suppliers, or subcontractors in connection with the performance of Services.

e) A Party seeking indemnification hereunder shall provide prompt notice of the Liability, and shall provide, at the indemnifying Party's request and expense, reasonably available information, assistance and cooperation; provided, however, that failure to give prompt notice of the Liability shall not relieve the indemnifying party of its indemnity obligations hereunder other than to the extent that such delay affected the ability to defend against the Liability.  At its expense, the indemnifying Party will defend against or settle Liabilities and will have control of the settlement or defense of Liabilities.  However, the indemnified Party or any Indemnitee may, at its choosing, participate in the defense or settlement at its expense.

f) In addition to the above, in the event of an Infringement Claim, Supplier may (and in the case of a judgment, order or injunction that restricts the exercise of any rights granted herein, shall) in good faith, at its option and expense, (i) obtain the right for DZS and its Indemnitees to exercise their rights in accordance with this Agreement; or (ii) substitute non-infringing software or services with equivalent functional capabilities; or (iii) modify the Deliverables or services, while retaining equivalent functional capabilities, so that it no longer infringes. The workaround provided under this section will result in no additional charges or fees to DZS or its Indemnitees.

g) Supplier will not be responsible for defense and indemnification to the extent the Infringement Claim Liability results solely from (i) the Deliverables or services being modified by DZS (other than

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

as approved or specified by Supplier); or (ii) the Deliverables or services being used in combination with equipment or software not (1) contemplated by the relevant documentation, (2) provided by Supplier, (3) approved or specified by Supplier, or (4) reasonably expected to be used in combination with the Deliverables or services.

### 19. LIMITATION OF LIABILITY

EXCEPT FOR CLAIMS ARISING FROM (I) EITHER PARTY'S INDEMNIFICATION OBLIGATIONS, WHETHER UNDER THIS AGREEMENT OR PURSUANT TO APPLICABLE LAW, (II) EITHER PARTY'S BREACH OF SECTION 10 (CONFIDENTIAL INFORMATION) AND/OR A BREACH OF THE OTHER PARTY'S INTELLECTUAL PROPERTY RIGHTS, OR (III) LIABILITIES RESULTING FROM A PARTY'S INTENTIONAL ACTS, GROSS NEGLIGENCE OR WILFUL MISCONDUCT (COLLECTIVELY, "FUNDAMENTAL CLAIMS"), NEITHER PARTY WILL BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR INDIRECT DAMAGES, INCLUDING BUT NOT LIMITED TO, ANY LOSS OF REVENUES, LOSS OF PROFITS OR LOSS OF GOODWILL, EVEN IF THE PARTY HAS BEEN ADVISED OF THEIR POSSIBILITY. EXCEPT FOR FUNDAMENTAL CLAIMS, EACH PARTY'S MAXIMUM AGGREGATE LIABILITY ARISING OUT OF THIS AGREEMENT OR ANY BREACH OF THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNTS ACTUALLY PAID OR PAYABLE BY DZS TO SUPPLIER PURSUANT TO THE SOW FROM WHICH THE APPLICABLE CLAIM OR CAUSE OF ACTION ARISES. WITH RESPECT TO FUNDAMENTAL CLAIMS, EACH PARTY'S MAXIMUM AGGREGATE LIABILITY ARISING OUT OF THIS AGREEMENT OR ANY BREACH OF THIS AGREEMENT SHALL BE LIMITED TO THE GREATER OF ONE MILLION DOLLARS ($1,000,000.00) OR TWO TIMES (2X) THE AMOUNTS ACTUALLY PAID OR PAYABLE BY DZS TO SUPPLIER PURSUANT TO THE SOW FROM WHICH THE APPLICABLE CLAIM OR CAUSE OF ACTION ARISES. THE LIMITATIONS SET FORTH IN THIS SUBSECTION SHALL BE DEEMED TO APPLY TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDIES SET FORTH IN THIS AGREEMENT. THE PARTIES ACKNOWLEDGE AND AGREE THAT THEY HAVE FULLY CONSIDERED THE FOREGOING ALLOCATION OF RISK AND FIND IT REASONABLE AND THAT THE FOREGOING LIMITATIONS ARE AN ESSENTIAL BASIS OF THE BARGAIN BETWEEN THE PARTIES.

### 20. Laws, Rules and Regulations

Supplier and its Services and Deliverables will conform to all laws and governmental orders and regulations in effect at the time of performance of the Services or delivery of the Deliverables, including but not limited to the following:

a) <u>Export Controls</u>. Supplier will comply, and ensure that its subcontractors and its and their employees and contractors have agreed to comply, with all applicable export and re-export control laws and regulations of the countries having jurisdiction with respect to the export of products and technology related to the product or included in the activities performed under this Agreement, including U.S. 'deemed export' and re-export regulations. Supplier shall be able to demonstrate such compliance to DZS.

b) <u>EU Directives</u>.  Supplier  represents and warrants that it shall comply, and take all reasonable action to enable DZS to comply, with all EU environmental directives affecting Services and Deliverables from the date such directives or their national implementation become legally enforceable, including, but not limited to, the Waste Electrical and Electronic Equipment (WEEE) Directive, the Restriction of Hazardous Substances (RoHS) Directive, and the EUP (the setting of eco-design requirements for energy-using products) Directive (2005/32/EC) as those Directives may respectively be amended.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

c) <u>Quality, Environment, Health and Safety</u>

   i) <u>OSHA</u>**.** Supplier will comply with the conditions of the Federal Occupational Safety and Health Act of 1970 (OSHA) (as amended, updated or replaced), all state equivalents, and all standards and regulations issued under any such laws, including maintenance of safety data.  Supplier will ensure that all Services furnished under this Agreement will conform to and comply with such safety standards and regulations and agrees that nothing contained in this Agreement will relieve Supplier from complying with all applicable federal, state and local laws, codes, ordinances, and regulations that may apply to Work, including, but not limited to, OSHA.

d) <u>Intentionally omitted.</u>

e) <u>Personal Data Protection</u>

   i) Supplier will 1) comply with all obligations under applicable laws relating to Personal Data; and 2) comply with DZS's reasonable instructions regarding the handling of Personal Data provided the DZS notifies and provided instructions for handling of Personal Data to Supplier with adequate time for Supplier to review in order to comply with instructions prior to providing Services.

   ii) Supplier will take whatever security measures are reasonably necessary to safeguard Personal Data against unauthorized access, destruction, disclosure, transfer, or other improper use.

   iii) Upon DZS's written request, Supplier will provide DZS with reasonable assistance to respond to any request or demand by a Personal Data owner or a governmental entity.

f) <u>Anti-Corruption.</u>  Supplier will comply with all applicable anti-corruption laws, including, but not limited to, the United States' Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1, et seq. and the United Kingdom's Bribery Act 2010, as amended.

**21. General**

a) <u>Notices</u>

   i) Legal notices may be given by certified mail or courier to the following:

   To DZS:              DZS Inc.

                        5700 Tennyson

                        Suite 400

                        Plano, Texas 75024

                        Attention:  Chief Legal Officer

   To Supplier:         Perficient, Inc.

                        555 Maryville University Dr., Suite 500

                        St. Louis, MO 63141


                        Attention: Legal Department

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

    ii)  Notice is effective on the earlier of five (5) days from being deposited for delivery or courier receipt.

b)  <u>Survival</u>. Any and all rights, obligations and liabilities under this Agreement which, by their very nature should reasonably survive the termination or expiration of this Agreement for any reason, will so survive, including, but not limited to: Sections 9 (Grant of Rights), 10 (Confidential Information), 14 (Workers), 17 (Warranties), 18 (Indemnification), 19 (Limitation of Liability), and 21 (General).

c)  <u>Severability</u>.  If any provision of this Agreement is determined to be legally unenforceable or invalid, the remaining provisions will continue in effect.  The Parties will substitute a provision that most closely approximates the economic effect and intent of the invalid provision.

d)  <u>Waiver</u>.  Unless waived and agreed in writing by the Parties, no action or inaction by a Party under this Agreement will constitute a waiver of a Party's rights or obligations under this Agreement.

e)  <u>Assignment, Control and Subcontractors</u>

    i)  Except as otherwise set forth in this Agreement, neither Party will assign or transfer this Agreement or any of its rights or obligations without the prior written consent of the other Party, which consent shall not be unreasonably withheld, conditioned or delayed;

    ii)  If DZS divests a business or portion of a business to a third party, to ensure the continued operation of such business without interruption, such third party shall be entitled to exercise the rights granted to DZS hereunder associated with such business (and shall be subject to the corresponding obligations) for a period of six (6) months following the divestiture;

    iii)  If DZS divests a business or portion of a business to a third party, DZS shall have the right to assign this Agreement, delegate any duty, or assign any right hereunder at no cost, upon the prior written consent of Supplier, such consent not to be unreasonably withheld, conditioned or delayed.

    iv)  DZS may assign this Agreement to Subsidiaries at its sole discretion in support of a corporate reorganization.

f)  <u>Intentionally omitted.</u>

g)  <u>Business Continuity Plan</u>.  Supplier represents and warrants that it has implemented a written Business Continuity Plan (a "**BCP**") that will ensure that Supplier is able to continue to comply with the obligations of this Agreement when the business is interrupted for any reason outside of Supplier's reasonable control (a "**Business Interruption Event**"). Supplier will deliver to DZS a copy of Supplier's BCP document within fifteen (15) days of a request from DZS.  Supplier shall inform DZS within seventy-two (72) hours if their BCP is invoked and the interruption will impact their performance under this Agreement.

h)  <u>Remedies Cumulative</u>. The remedies under this Agreement are cumulative and the recourse to one remedy shall be addition to all other remedies at law or in equity.

i)  <u>Counterparts</u>. This Agreement may be executed and delivered in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.  The exchange of facsimile, electronic, or scanned copies of executed signature pages is acceptable to execute this Agreement and such copies shall be deemed to be originals.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

j) <u>Governing Law</u>. This Agreement will be governed by the laws of the State of Texas, without reference to any conflict of laws rules. Any lawsuit or other claim arising out of or relating to this Agreement and/or the activities contemplated hereunder shall be brought in the state or federal courts sitting in Collin, Texas, and such courts shall have sole and exclusive jurisdiction and venue with respect to any such action. Each Party expressly waives any defense that jurisdiction and venue do not lie in such courts.

k) <u>Expenses</u>. Except as otherwise provided for in this Agreement, each Party shall be responsible for its own expenses incurred in connection with exercising its rights and satisfying its obligations created under the terms of this Agreement.

l) <u>Modification/Entire Agreement</u>. This Agreement, including all exhibits hereto, constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes (i) all other prior written, oral or electronic agreements and understandings between the Parties concerning the subject matter herein, and (ii) any click-wrap or shrink-wrap terms and conditions (or any terms and conditions referenced within any click-wrap or shrink-wrap terms if not actually contained therein) provided or associated with the Deliverables. The remedies in this Agreement are in addition to, and not in lieu of, any other remedies available at law or equity. This Agreement may not be modified or any right of a Party waived, except in writing that expressly references this Agreement and is duly executed by each of the Parties.

m) <u>Order of Precedence</u>

   1) Purchase Order terms and conditions, as well as terms and conditions in Supplier's order acceptance, acknowledgement form or other document, will be for administrative purposes only and invalid to the extent they conflict with this Agreement. DZS rejects any additional or inconsistent terms and conditions in any other document issued by Supplier, and such additional terms and conditions shall not be binding on DZS.

   2) Any exceptions to the Agreement shall be noted in the SOW and are not to be construed as permanent modifications to the Agreement (i.e. they apply only to the SOW). In the event of a conflict between the terms and conditions of the SOW and the terms and conditions of any associated Purchase Order, the terms and conditions of this SOW shall control.

n) <u>Non-Solicitation</u>. Neither Party shall solicit, nor attempt to solicit, directly or through a third party, the services for employment or otherwise grant employment or subcontracting arrangement through a third party to any employee of the other Party who is involved in the performance of Services pursuant to a Statement of Work during the time period such Services are being performed and for one year after their completion without the prior consent of the other Party. The foregoing shall not be deemed to include responses to general solicitations of employment (whether through advertisements, recruiting firms or other means) not specifically directed toward employees of the Parties.

*[Signature page follows]*

CONFIDENTIAL INFORMATION

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

IN WITNESS WHEREOF, the Parties have signed this Agreement by their duly authorized representatives to be effective as of the Effective Date.

**DZS INC.**

By: *Justin Ferguson*
08F84698177C437

Name: Justin Ferguson

Title: Chief Legal Officer

**Perficient, Inc.**

By: *[signature]*
9E1B617F1482461...

Name: Stuart Massey

Title: General Manager

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

**EXHIBIT A**

**Statements of Work**


Statements of Work may be executed separately and incorporated into this Agreement by their execution, provided that each such SOW references this Agreement, is referenced as Statement of Work No. __ {sequential number} to this Agreement, and is signed by both Parties.  The form of each SOW shall be determined by mutual agreement of the Parties, but should generally include the items in the following example of a Statement of Work.


**EXAMPLE STATEMENT OF WORK**


**Statement of Work No. X**

**to**

**Master Services Agreement**


THIS STATEMENT OF WORK NO. X ("**SOW**") is entered into as of _____, 2021 (the "**Effective Date**") between [*specify appropriate DZS Purchasing Entity*] ( "**DZS**"), and _____, a _____ ("**Supplier**") and is incorporated into and governed by that certain Master Services Agreement dated _____ (the "**Agreement**").  All defined terms used herein shall have the meaning ascribed to them in the Agreement unless otherwise defined herein.  The terms and conditions of the Agreement apply to this SOW unless specifically altered by the SOW.


1.  **Project Information**

    a)  **Project Description**

        [*Provide a short overview of the Project (e.g. type of Services, nature of the Deliverables {h/w, s/w, I&C, etc.})]*

    b)  **Contact Information**

        [*Provide the name, title, phone number, and email address of the business primes for DZS and Supplier and the address where Deliverables should be delivered.*]

2.  **Technical Specifications**

The following documents are referenced in this SOW:

[*Provide a list of technical documents referenced in the SOW*]

3.  **Statement of Work**

    a)  **Description of Services**

        [*Provide a description of the activities to be performed under the SOW (the "Services").*

    b)  **Location of Work Facilities**

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

*[Provide a description of where the Services will be performed.]*

c) **Personnel**

Supplier will employ only competent (e.g. trained and/or certified) skilled personnel for the performance of the Services.

d) **Design Tools and Specialized Equipment**

Supplier, at its expense, will provide the tools and equipment necessary to perform the Services described in this SOW. Supplier will maintain the tools and equipment and ensure that any necessary calibration is performed to ensure tools and equipment are in working order.

In certain circumstance, DZS may issue tools or equipment to Supplier. If the Services require DZS to provide tools or equipment, that requirement shall be detailed in this SOW. Where DZS provides tools or equipment either free of charge or on rental to Supplier, Supplier will remain responsible for any loss or damage to the tools and equipment for their full replacement cost.

e) **Permits, Licenses, and Approvals**

Supplier, at its own expense, will obtain all forms of government issued permits, licenses, or approvals necessary to perform the Services and represents that it will meet all local, state, and federal regulations and qualifications required for the performance of the Services.

f) **Assumptions**

*[Provide a high-level list of key assumptions that affect the project.]*

g) **Risks**

*[Identify the main risks associated with the project and mitigation steps that will be taken.]*

h) **Deliverables**

Supplier shall provide the following Deliverables to DZS:

*[List each Deliverable and the format in which it is to be provided.]*

i) **Open Source Contents**

*[List all applicable license agreements for each open source item and provide a copy of such license agreement(s) which shall be deemed appended to this SOW as Appendix A hereto.]*

j) **Project Schedule**

*[Provide project milestone dates (e.g. start date, end date, and dates when events will be completed throughout the project).]*

k) **Acceptance Criteria**

*[For each Service or Deliverable, identify the criteria for DZS's Acceptance of the Service or Deliverable.]*

i) <u>Services Requiring Site Walk-through</u>

For Services performed at a DZS or DZS Customer site, Supplier will notify DZS in writing when all Services have been completed in accordance with this SOW. Unless DZS notifies Supplier otherwise, within five (5) business days of DZS's receipt of such notification, DZS and Supplier will perform a walk-through inspection of the site and agree to any items that require correction ("**Punch List Items**"). Supplier agrees to fix all Punch List Items within five (5)

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

business days of the date of the walk-through inspection or within such other time period agreed by the Parties.

When DZS is satisfied that all Services have been completed in accordance with the SOW and any identified Punch List Items have been corrected to the satisfaction of DZS and/or of the DZS Customer, DZS will notify Supplier of its final Acceptance of such Services in writing.

ii)  Services Not Requiring Site Walk-through

For Services performed other than at a DZS or DZS Customer site, Supplier will notify DZS when it has completed the Services. Upon receipt of Supplier's notice DZS will determine whether the Services have been completed in accordance with the applicable requirements. DZS will then either issue a written final Acceptance to Supplier to allow Supplier to invoice accordingly against the relevant Purchase Order or provide Supplier a written reason why the Services cannot be Accepted.  Any re-work or correction required by Supplier should be completed with five (5) days from receipt of the DZS notice informing Supplier of the re-work or correction activity required.

l)  **Price and Expenses**

The following prices and fees are in [*insert currency*].

[*Use (i) or (ii) as appropriate depending on whether the engagement is for a fixed fee or time and materials.*]

i)  Fixed Price Engagement

| PROJECT FEES | TOTAL |
|---|---|
| Work element #1 | $   0 |
| Work element #2 | |
| Work element #3 | |
| Total | |

ii)  Time and Materials Engagement

| TYPE OF SERVICES | ESTIMATED HOURS | HOURLY RATE | ESTIMATED FEES |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Estimated Total | $  0 |

iii)  Travel Expenses.  All travel and living expenses are included in the prices above unless otherwise agreed and set out in this section.

iv)  Other Expenses.  DZS will not be liable for any charges in addition to what is contained in this SOW unless otherwise agreed and set out in this section.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

v) <u>Summary of Cost</u>

| FEE CATEGORY | TOTAL |
|---|---|
| Services | 0 |
| Travel Costs | 0 |
| Other Costs | 0 |
| **The estimated total fees for this project are:** | $ 0 |

## 4.  Intellectual Property Rights

Unless otherwise set forth below, the terms and conditions applicable to confidentiality and licenses are set forth in the Agreement.

### Background IPR

This section specifically enumerates any Background IPR that DZS and Supplier will provide to support the performance of the work under this SOW.

i) DZS Background IPR

*[Identify each unique instance of Background IPR provided by DZS.]*

ii) Supplier IPR

*[Identify each unique instance of Background IPR provided by Supplier.]*

b) **Foreground IPR**

*[Identify any Foreground IPR that will be developed as part of this SOW.]*

## 5.  Performance Expectations

a) **Service Levels**

*[Identify any service levels Supplier is required to meet]*

b) **Key Performance Measurements**

i) At the start of each calendar year, the Parties will agree upon a set of clear and measurable objectives and key attributes of Supplier's performance ("**Key Performance Indicators**" or "**KPIs**").  The Parties will measure the KPIs using a balanced scorecard that monitors various aspects of performance in relation to the relative importance of each item being monitored.

ii) KPIs that fall below an Unacceptable Service Level (as defined below) will result in an additional fee against Supplier ("**At-Risk Fee**").

iii) Each KPI will consist of the following information:

(1) Descriptive name;

(2) Definition;

(3) Statement of the Objective;

(4) Description of how the KPI is to be measured and calculated;

(5) Identification of the frequency of measurement and reporting;

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

Note:  The frequency of measurement and reporting will depend on the nature of the Service to which the KPI applies.  In most cases, the KPI will be measured and reported quarterly by country, location, or site; however, there may be some KPIs which are more appropriately measured and reported on a semi-annual or annual basis.

(6)  For At-Risk KPIs, two service level thresholds: (i) a threshold identifying the service level that DZS expects to receive for the fees identified in Section 3(l) ("**Expected Service Levels**"); and (ii) a lower limit below which the service level should never fall ("**Unacceptable Service Level**").

(7)  Assignment of a relative weighting of the overall value of the KPI to the At-Risk Fee calculation.

iv)  Initial KPIs:

*[Identify any initial KPIs]*

## 6.  Warranty

*Provide additional warranties for Services or Deliverables, if any.*

IN WITNESS WHEREOF, the Parties have caused this SOW to be executed by their duly authorized representatives on the date and year first written above.

Note to Drafter: Only one Purchasing entity will enter into a SOW.

**[DZS PURCHASING ENTITY]**

By:       _____

Name:   _____

Title:    _____

**[SUPPLIER]**

By:       _____

Name:   _____

Title:    _____

**NOTE:  SOWs should be executed as separate documents entitled "Statement of Work No. X", where "X" is a sequential number.**

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

**EXHIBIT B**

**Confidentiality and Intellectual Property Agreement and Acknowledgement**

I, the undersigned, acknowledge that _____[Insert applicable Supplier name]_____ ("**Supplier**") has a contractual relationship ("**Agreement**") with a DZS Company for the supply of certain services and deliverables ("**Services**"), as a result of which in the course of my supplying Services as an employee, agent or contractor of Supplier or as an employee, agent or contractor of an agent or contractor of Supplier, I may receive, become aware of, or be given access to Confidential Information (as defined below) of DZS Company.

In consideration of (i) DZS Company permitting Supplier to disclose to me, directly or indirectly, Confidential Information, (ii) DZS Company's direct or indirect disclosure to me of Confidential Information, and/or (iii) access by me to Confidential Information in the course of supplying Services, and in consideration for the entering into an arrangement with Supplier (e.g. as an employee, agent or contractor of Supplier or as an employee, agent or contractor of an agent or contractor of Supplier) for the supply of Services, I agree as follows:

<u>**DEFINITIONS:**</u>   The following definitions will apply to this Confidentiality and Intellectual Property Agreement and Acknowledgement ("**CIPAA**"):

"**Assignment**" shall mean the provision of Services, including, without limitation, the advice, information and assistance, to be provided by me to DZS Company on behalf of Supplier or a contractor of Supplier and more particularly described in the Agreement between DZS Company and Supplier for the provision of those Services or in the purchase order which relates to my Assignment.

"**Assignment Termination Date**" shall mean the date when the Assignment ends, or when my involvement with the Assignment is brought to an end.

"**Confidential Information**" shall mean all information or material that has or could have commercial value or other utility in the business or prospective business of DZS Company. Confidential Information also includes all information actually disclosed, whether tangible or intangible, and in whatever form or medium provided, that I, acting reasonably, would consider as confidential, including any information of which unauthorized disclosure could be detrimental to the interests of DZS Company, whether or not such information is identified as Confidential Information by DZS Company.   Confidential Information shall include, without limitation, the terms and conditions of this Assignment. Confidential Information does not include information that I can demonstrate:  (a) was in my possession prior to being furnished under the terms of this Assignment, provided the source of that information was not known by me to be bound by a confidentiality agreement with or other continual, legal or fiduciary obligation of confidentiality to DZS Company; (b) is now, or hereafter becomes, through no act or failure to act on my part, generally known to the public; (c) is rightfully obtained on a non-confidential basis by me from a third party, without breach of any obligation to DZS Company; or (d) is independently developed by me without use of or reference to the Confidential Information.

"**Customer**" shall mean the customer or customers of DZS Company in connection with whom I am carrying out the Assignment;

"**DZS Company**" shall mean DZS Inc.  or one of its Subsidiaries, contractors or Distributors.

"**Intellectual Property Rights**" or "**IPR**" means without limitation, all rights in any invention, discovery, improvement, utility, patent, patent rights, trademarks, service marks, copyrights,

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

copyrightable work, industrial design or mask work, algorithm, data structure, trade secrets, trade dress or know how, Confidential Information, or any idea having commercial value and any other intellectual property rights; IPR shall include all rights of whatsoever nature in computer software and data, all intangible rights or privileges of a nature similar to any of the foregoing in every case in any part of the world and whether or not registered, and all rights in any applications and granted registrations for any of the foregoing rights.

**"Subsidiary"** means an entity that directly or indirectly is controlled by DZS Inc. by equal to or more than fifty percent (50%) of the voting stock, shares or voting power.

## 1.   CONFIDENTIAL INFORMATION

1.1.   I shall receive and maintain all Confidential Information disclosed to or accessed by me during the Assignment and all work product produced by me in confidence.

1.2.   I shall not provide copies of any Confidential Information disclosed to, produced by or accessed by me to anyone except to someone authorized by DZS Company to know.  I shall use the same degree of care as I use to protect my own confidential information and that of my employer or contractor, but no less than reasonable care, to prevent unauthorized access, use, alteration, dissemination, or publication or destruction of the Confidential Information.   I shall not disclose to a third party or copy any Confidential Information which I have gained by virtue of the Assignment without the prior written consent of DZS Company.

1. 3.   I shall upon request from DZS Company, immediately return to DZS Company all Confidential Information and copies thereof, or, if directed by DZS Company, shall immediately destroy such Confidential Information and all copies thereof and shall provide proof of their destruction to DZS Company.

1.4   I shall not make use of any Confidential Information disclosed to, produced by or accessed by me for any purpose other than to supply Services in connection with the Assignment.

1.5   I shall not be bound by the obligations restricting disclosure and use set forth in this CIPAA with respect to Confidential Information, or any part thereof, which is disclosed when such disclosure is compelled pursuant to legal, judicial, or administrative proceeding, or otherwise required by law, subject to me giving all reasonable prior notice to DZS Company to allow it to seek protective or other court orders.

1.6   I declare that I am under no obligation to any other person, firm, entity or corporation that is inconsistent with this CIPAA or that imposes any restriction on the Assignment.

## 2.   INTELLECTUAL PROPERTY RIGHTS

2.1.   All works produced by me in connection with the Services, including without limitation all works of authorship, ideas, concepts, designs, and inventions, and all rights in and to such works, including but not limited to patents, copyrights, rights to create derivative works, trademarks, trade secrets, and other Intellectual Property Rights (the works and Intellectual Property Rights collectively referred to herein as **"Work Product"**) shall be the sole property of DZS US LLC from the moment of their creation, and I hereby assign, irrevocably and in perpetuity, whatever right, title and interest I may have or claim to such Work Product and all rights therein, including, but not limited to, any patent, copyright, right to create derivative works, trademarks, trade secret, and other Intellectual Property Rights to DZS US LLC. All legal and beneficial title and interest in

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

and to all Confidential Information I create as a consequence of the Assignment shall belong to DZS US LLC.

2.2   I hereby waive any and all moral rights I may have in the Work Product, and hereby authorize DZS US LLC and/or any person or entity obtaining rights directly or indirectly from DZS US LLC (to the extent of such rights) to make any desired changes to the Work Product or any part thereof, to combine or use the Work Product with any other goods, products, materials, services or software in any manner desired, and to withhold my identity as an author in connection with any distribution or use of the Work Product in any manner, either alone or in combination with other goods, products, materials, services or software.

2.3   I agree to execute any further documentation required to file, register or otherwise protect DZS US LLC's interests in the Work Product, to evidence, record, perfect, or otherwise demonstrate DZS US LLC's ownership interests in the Work Product, or to secure research and development tax incentives, at DZS US LLC's reasonable request and expense.

**3.   PROTECTIVE COVENANTS**

3.1   I shall not, without the consent of DZS Company (which consent shall not be unreasonably withheld), either during my performance of Services under this CIPAA or for a period of twelve (12) months after the Assignment Termination Date, whether alone or jointly and whether on my own account or for the benefit of Supplier or any person, firm, company (which is not a member of DZS Company), association, charity or society (whether incorporated or otherwise) (a) offer to employ, or (b) endeavor to entice away from DZS Company, or (c) endeavor to employ any person who is or was at any time during the period of twelve (12) months expiring on the Assignment Termination Date an employee, director or officer of DZS Company.

3.2   I am not an employee of DZS Company and am not eligible for or entitled to any compensation, benefits, perquisites or privileges given or extended to any DZS Company employee.

3.3   Each of the undertakings given in this CIPAA shall be deemed to be separate and severable and to the extent that any provision hereof may be unenforceable or void, such provision or part thereof shall be deemed to be deleted without affecting any of the other valid provisions contained herein, and such deleted provision shall be reformed to the minimum extent necessary in order to be enforceable.

**4   MISCELLANEOUS**

4.1   I hereby undertake that I shall execute and/or procure the execution of all documentation necessary to give effect to the clauses contained in this CIPAA.

4.2.   The obligations in this CIPAA are personal to me and shall continue in effect after the Assignment Termination Date. I shall maintain the confidentiality of any Confidential Information received pursuant to this CIPAA for a period of ten (10) years following the date of my signature on this CIPAA, regardless of whether or not I remain associated in any manner, either directly or indirectly, with Supplier or its agents and/or contractors.

4.3.   I acknowledge that damages may not be an adequate remedy for a breach of this CIPAA by me and, consequently, that an injunction and/or other appropriate equitable relief may be obtained to remedy a breach or threatened breach hereof.

4.4.   I shall abide by DZS Company policies and procedures as they pertain to my supply of Services and Work Product, as such policies and procedures are identified to me.

EXHIBIT A

DocuSign Envelope ID: CD0AA5B1-424D-4478-A70A-834DA5B6E6BA

5.      **GOVERNING LAW -** To the extent that I have a choice regarding the governing law of this CIPAA, this CIPAA shall be governed by and interpreted in accordance with the laws of the State of Texas without reference to its conflict of law provisions, and I hereby submit to the personal jurisdiction of the courts of  Collin County, Texas with respect to any dispute involving or arising under this CIPAA.

I acknowledge and agree to the terms contained in this Confidentiality and Intellectual Property Agreement and Acknowledgement.

Signature: _____

Print Name: _____

Title: _____

Date: _____

EXHIBIT A